The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. So we're ready to hear our argument in our next case, Old Republic National Title v. Shulman, Rogers, Gandal, Mr. Marinello, you're up first. Yes, Your Honor, thank you. Good afternoon and may it please the Court. The District Court's entry of summary judgment in this case and in favor of appellees Morton Fowler and the law firm of Shulman, Rogers should be reversed because the District Court erroneously determined that the appellee's malpractice caused no harm to Old Republic. That conclusion was incorrect for two primary reasons. First, in determining that Old Republic still would not have prevailed on its claim of equitable subrogation absent appellee's malpractice, the District Court misinterpreted and misapplied Maryland law on equitable subrogation, unnecessarily limiting that broad doctrine and overlooking its primary purposes of avoiding unjust enrichment and honoring a refinancing lender's intent. And second, in determining that Old Republic also would not have prevailed on its equitable mortgage and reformation claims, the District Court conflated the concepts of mutual mistake and intent and it disregarded overwhelming evidence in the record demonstrating the party's intent to create and enter a refinance mortgage secured by the property. Had the District Court properly applied Maryland law and properly assessed the record, it would have and should have determined that, but for appellee's malpractice, Old Republic would have prevailed on these claims in the state trial and appellate courts. Well, counsel, if I could interject, as I looked over this case, I was struck with the thought that, you know, obviously we have no federal question here. These are all, you might say, somewhat esoteric questions of Maryland law, and we have multiple decisions from multiple courts in Maryland, including cases from the Maryland Court of Special Appeals that seem to be relevant that postdate the District Court's opinion here. And it occurred to me, which you might want to respond to in opposing counsel as well, is that this might be a viable candidate for certification to the Maryland Court of Appeals. I mean, basically, we're trying to guess as to what the Maryland Court of Appeals would do in the circumstance where they had heard the case if there had been a timely appeal filed, and I just wondered whether it might make more sense to let them actually tell us. Your Honor, I think the question certainly hits the nail on the head in terms of what the substantive issue is, which is what would have happened on appeal in this case had the appellees timely noted that appeal. Now, that being said, I would note that the issue is still ripe insofar as the appellee's malpractice involves standing in the trial court. The failure by the appellees to establish standing on behalf of First on that issue. And while the state court did at least purport to decide the case on its merits, we believe that decision was still very specifically limited to reformation of mutual mistake and that it did decide the claims of equitable subrogation on standing alone and didn't decide equitable mortgage at all. So there is some concern on Old Republic's part that even if the case did time was timely noted for appeal and did proceed to an appeal, one could foresee the Court of Special Appeals solely deciding the case on standing and saying the trial court had the case right on standing. We see no need to address these issues substantively. So I but I take your honor's question to heart because this is a matter of what would the Court of Special Appeals had done. I don't know that it's a certification that would be limited to a specific question because really that certification would involve the Court of Special Appeals essentially reviewing the record and conducting the appeal as it should have had the appellees not committed malpractice. So I understand your honor's question. Hopefully I've given an answer that is responsive to it. That being said, the $1.1 million refinancing mortgage loan at issue in this case. Can I just just I'm trying to process that. So do you do you have any objection? I guess is another way of asking Judge Agee's question to us. And you may not be familiar with our process of certifying questions to the to the state courts, but we're entitled to certify specific questions. We don't have to send the whole appeal over to certifying the questions with respect you know equitable subrogation and mortgage and how those were treated to the to the Maryland courts. Do you have any objection to us doing that? I can't I can't say that I don't have an objection to you doing that. No your honor to this court doing that. I I wonder a little bit. It seems to be a difficult question to frame and to pose for the court only because I think it's necessary to look at the facts of the case in order for the court to understand. If the question was for example does equitable subrogation apply in an instance like this where a deed is defective because of the two tenants by the entirety is holding the property only one signed that that deed. I think a question like that could be framed specific for the court of special appeals. That being said I think there is existing law as we've cited in the brief on that particular issue for example the bank of New York Mellon versus Ashley case out of the district court in Maryland which does address that issue and we do see equitable subrogation being applied to that circumstance which is the circumstance here in this case. So I do believe there is law that could be used to decide the issue but the answer your question Judge Richard said no that we would have no objection to doing that. Well with respect to that that part and I don't want to take but so much time of your argument on the merits you know the Ashley case was a district court opinion it wasn't an opinion from the court of appeals of Maryland and as your briefs of both sides indicate there are cases that say somewhat different things depending upon their history about the topic of equitable subrogation for instance. So one wonders whether that the most recent case the 2020 case JPMorgan Chase Bank is a more accurate representation of cases that were that were given earlier but the you know in our certification process we only certify the question if the answer to be given would resolve the issue before us is for instance had the notice of appeal been filed on time and the court dealt with the question of equitable subrogation if it determined that indeed equitable subrogation would have been available then that would seem to answer the question of proximate cause and vice versa and that was my intent in bringing the topic up. And I and I appreciate that Judge Agee and I think that is a viable question and I think it is it is essentially the answer we're trying to obtain in this case so again we would not have an objection to that. I am glad Judge Agee that you brought up the JPMorgan Chase case and from 2020. I was not going to to specifically raise or attempt to rely on it of course because it's unpublished but we do believe that the court's analysis of that case is pertinent and even to the extent that there was a motion potentially pending whether to publish that case the court could also weigh in and that case its analysis of the cases we have cited here the court of special appeals takes some of the cases we've cited here and analyzes them and it does it in a way that I believe is consistent with the argument we're here. So again I do think that is a viable option and it's one that Old Republic would not object object to your honor. With respect to that first issue that I raised and before I do that I did want to just sort of point out that the the 1.1 million dollar refinancing loan that was that was extended by First Horizon in this case to Mr. and Mrs. Georg was at their request used to pay and satisfy their two pre-existing Chevy Chase mortgages in the amount of nine hundred seventeen thousand dollars. From the loan documents in the record that loan was also clearly intended to be secured by the property and was intended to give First Horizon a priority position that was previously held by Chevy Chase Bank. There were no other liens or encumbrances at issue in this case. While Mr. Georg was the sole borrower on the transaction the deed of did need to be signed by both he and his wife because they held the property as tenants in the entireties. The only issue in this case the only issue in the transaction was that that the deed of trust securing the refinance loan failed by mistake to include Mrs. Georg and it only include included Mr. Georg. Of course when when First Horizon was then in a position to try to foreclose on the property it was unable to. Old Republic as the insurer for First Horizon's longtime counsel the appellees to pursue and obtain what even the appellees as demonstrated in the record believed and advised Old Republic was was almost certain relief in the form of equitable subrogation or reformation or equitable mortgage. And it's due to the appellees malpractice that that did not happen. Instead judgment was entered in favor of the Georg's granting them a $917,000 windfall. The reason I give that background is because the district court summarized Maryland law on equitable subrogation in the following way. It stated quote Maryland courts have interpreted equitable subrogation in the mortgage context to be appropriate where an intervening lien holder of which a refinancing lender was excusably unaware jumps the queue in terms of equitable subrogation issue that quote because First Horizon's loss of its priority status was not a matter of line jumping but of defects in the transaction itself the court concludes that equitable subrogation does not provide a basis to grant relief to First Horizon. That's a fundamentally inaccurate statement of Maryland law on equitable subrogation. And I would submit even equitable subrogation in other jurisdictions um because it unnecessarily limits equitable subrogation to cases involving this quote unquote line jumping and it also implies if not directly states that equitable subrogation can't apply to cases involving defects in the transaction. Those two issues I do think are crystal clear from the Maryland law that we do have. As briefed by Old Republic there's a multitude of cases where equitable subrogation is implied without any line jumping that's involved. And those same cases also involve defects in the transaction. They include for example from our brief Behrman v. Hunter, Fishman v. Murphy, Millholland v. Tiffany. Those are the state cases and there are federal cases Bank of uh Holiday v. Holiday which this court affirmed and Bank of New York v. Ashley which is the Ashley case we mentioned a moment ago. Those cases make crystal clear in a couple of them even when you when you take Millholland which is the first case where equitable subrogation was applied in the mortgage context back in 1886. The court actually noted how there were no intervening liens in that case and it and it explained how equitable subrogation is appropriate so long as there are not existing intervening liens. So from the inception of equitable subrogation being applied we know that it applies where in the transaction. The Millholland case described it as a defective mortgage because there was a procedural defect in the oath. So there is ample case law your honor that demonstrates that the district court's approach to Maryland law on equitable subrogation was clearly erroneous and by taking that different view in the district court there was it almost couldn't avoid making an applied and it determined that Old Republic would not have prevailed if there hadn't been a malpractice and if it had its day in the state court or trial court and the appellate court. Contrary to the district court's interpretation of the law, Maryland law with or without certification of the court of special appeals is quite clear we believe from the cases cited that it enjoys broad application to deeds of mortgages and it focuses on avoiding unjust enrichment preventing harm to other lien holders and honoring a refinancing lender's intent. Again we see that in the multitude of cases that we've briefed as a by example the Egele case from the court of special appeals tells us that the primary purpose of subrogation is to prevent unjust enrichment. The Fishman case by the court of appeals indicates that again while noting equitable subrogation enjoys broad application to deeds of trust it stated the purpose of equitable subrogation is to prevent inequitable consequences. If you fail to prevail here what do you describe as the unjust enrichment? The unjust enrichment that we see your honor is that the Georgs um were given a $917,000 windfall by first horizon satisfying their Chevy chase loans so they did not have to satisfy those a separate lender satisfied those and they then took their property free free and clear of the 1.1 million dollar loan that they requested from first horizon on their property. So that I'm not it's difficult to imagine sort of a greater windfall where they've had their $917,000 pre-existing mortgage loan satisfied and are able to walk without without any security lien on their property and don't have to essentially pay that loan to free their property. So we believe that that is you still have a client unsecured claim against Mr. Georg. It remains unsecured correct your honor until unless and until the property were to be split if they did not hold the property as tenants by the entireties but you're right that there is an unsecured loan there but we we would submit that that is why equitable subrogation exists when the debt when the when the intent is clear for the parties to for a a payer to come along and to satisfy a pre-existing mortgage loan which enjoys priority status the payer is not a volunteer the payer is not obligated obligated to pay that loan it does it it pays the loan and it takes actions to protect its interests and it pays the loan in full those are all the classic elements of equitable subrogation that allow that payer to step into the shoes of the prior lien holder. So while there while there may be an unsecured interest an unsecured an unsecured loan that they that first horizon held and now republic holds as the as the subrogate equitable subrogation exists to correct that it does no harm to the georgs it leaves everybody in the same place as if the refinance loan never occurred and I see that I'm up for time my time is up and I'll reserve I'll wait for reserve my reservation thank you. All right thank you Mr. Marinello. Mr. Frederick we'll hear from you. May it please the court in response to the question posed of Judge Agee by you and and also in part by Judge Richardson I would submit to the court that if in fact the findings of the original trial court in this case Judge Alexander in the circuit court for Baltimore County are given deference and are not by this court found to be clearly erroneous on this record with the finding that Mrs. Georg did not intend to be a party to this deed of trust did not intend to give any security I would submit to the court that on the state of the law as is presently there for the court to consider and that does not include an unreported decision of Maryland's intermediate appellate which by rule I can't even cite to unless it's in a case that it's relevant related to i.e. the same parties or parties in privity nor can it be cited by rule so that case for all set for all intents and purposes doesn't count it's under the state of the law is this as Mrs. Georg's intent relevant to the equitable subrogation case as opposed to equitable mortgage it is indeed your honor because if this is as Judge Chuang noted in his opinion trying to convert an unsecured obligation into a secured obligation whether she intended to be bound or not is relevant and it's important to note that based on the record there's nine hundred and seven thousand dollars of obligation that's sitting there at Chevy Chase Bank it's the original construction loan and the home equity loan but this alone for 1.139 116 thousand dollars it's perfectly rational that Mrs. Georg didn't want to subject herself to that kind of additional exposure at this transaction interestingly the closing instructions from Old Republic to the closing agent its agent by admission said best title in Mr. Georg they prepared the deed of trust and the note her name doesn't appear on either one and as Judge Richardson points out they got what they bargained for they got a note from Mr. Georg they can prosecute as to Mr. Georg they have other remedies as well their own agent well but they they got they didn't get what they bargained for that's that I understand you're an advocate but not even you can actually say that because they got a mortgage that because of the tenancy of the entirety was wholly worthless right we all recognize that they signed a piece of paper that could have no value now I understand your other arguments but when you say they got what they bargained for that that takes it a step far I believe fair enough judge fair enough I accept that what I meant by that comment and probably poorly worded on my part is they prepared the deed of trust they sent over the information saying best in him only their agent knows the true state of the title because he does the title work and notwithstanding that he only has Mr. Georg signed the deed of trust and then he certifies the title with both of them they're in the position of dominant bargaining and and all cases cited are talking about kind of mistakes or defects in the title what we've got here is we've got a screwed up title to start with they don't actually get anything right and they're the ones who fumbled the ball right off the first play it's not there's a are there are there any cases that that you could suggest that stand for that idea that though oh and this is obviously not what the district court found but though otherwise equitable segregation would be appropriate it is not because the mistake was made by the party with a dominant you know bargaining position I can't really think of one judge but I would respectfully suggest that the real remedy here it if you look at the complaint that's filed and another law firm filed essentially the same claim claim in the second case and didn't change it it's to reform the original transaction because the appellant says oh everybody intended it was going to be both of them essentially what you and I were just talking about with the they got what they bargained and if in fact that's true the remedy in equitable segregation the remedy is either the reformation or equitable mortgage which of course they tried to get the problem with equitable mortgages from the appellant's perspective that requires mutual intent and here the trial court who had the ability to observe the witnesses and made the finding of fact that Mrs. Georg didn't intend even with the exchange with counsel it said ja 196 to 200. So I get that with the equitable mortgage but it doesn't seem to apply to the equitable subrogation claim I mean that's the that's I think Judge Agee's question from a minute ago sort of goes back to why why does her intent I get your point on subrogation that that doesn't seem to show up in those in those cases and I'll I'll agree they're not always a model of clarity. Well there's an interesting case out of Missouri that's cited in one of these cases that says equitable subrogation really depends on the facts of each case and obviously equitable subrogation requires equity one who seeks equity must do equity and if you convert this over the way the appellant says in their reply brief you really turn it in this into a no-fault doctrine you know just the lender says the lender says every one of these cases the lender no you don't but that's you know I mean you've got a position but I don't want you to overstate it because we sort of just posit that most people would think that they didn't get what they bargained for right I mean this is back to our earlier point that it'd be difficult to imagine that they signed this mortgage knowing that it was worthless and and could not have given the tenancy entirety any value well it's not I understand your your point about her but that seems like exactly what equitable subrogation is about well the mortgage just as an aside isn't necessarily worthless it's been noted that it is potentially depending on what happens with her and their status as tenants by the entireties there's potentially value in the deed of trust but they're the ones that prepared it the way it ends up getting signed notwithstanding only Mr. Georg applied for this loan and there's no evidence that anyone on the appellant side ever told Mr. Mrs. Georg what their intent was what they really intended as you and I've been discussing which is to get the security there no evidence of that was presented to the trial court which again goes back I don't I don't think the opposing counsel will argue with you that there are mistakes made and well they're not the ones who made the mistakes still have a job or not the record doesn't reflect and that really isn't relevant for here but and looking through this there were several cases I think Westfall was one of them where the party who wanted equitable subrogation had not been prudent had been negligent they had either recorded in the wrong place they had not done a title examination when they offered the substitute loan so there was negligence in those cases but I think there was still equitable subrogation failed so I'm not unless you've got some pretty definitive law I'm not sure the fact that old republic or or first horizon was negligent is dispositive but Judge Agee in none of those cases was there an issue as to whether or not there was either an intention or a willingness on the part of the debtor to be subrogated where where there have been these there's a case that's cited in the name is skipping me for the moment but it's a bankruptcy case and it's the U.S. has tax liens and it's trying to get an intervening lien and in that case the borrowers consented to having equitable subrogation and that's pretty much the situation in a variety of these cases there's not one that I've seen where there's a question as to whether or not one or both of the borrowers intended to be bound there are cases where there's fraud on the lender and the argument there is well that's not the lender's fault and therefore they should be equitably subrogated they should be able to jump in line but the issue here is irrefutably unless this court concludes it's clearly erroneous there's a finding that one of the borrowers did not intend to be part of this transaction and under that set of circumstances that's true of the forgery cases too right I mean the fact that that when you know the the cases we've got and I'm not a names of cases guy either but where the the husband forges the wife's name it'd be undisputed that the wife didn't intend to be bound by it any more or less than this woman did not intend to be bound by it totally agree your honor but in those cases the spouse didn't have an objection to being equitably subrogated to some of the debt not all of the debt but some of the debt and that's what the court ultimately did there's a divorce case in particular that's coming to mind where there's a the husband's in Brazil can't remember the darn name of the case but the hubby goes to Brazil and he leaves her kind of holding the bag and there's a couple of loans that he takes out in between and she doesn't have any problem with oh yeah the original loan that we were both going that should you all should be subrogated to that and that's what the doctrine is for which I think is a fair reading of the cases I think that's the way Judge Chuang read the case the doctrine is not here to take something that is unsecured as to Mrs. Gilbert and arguably unsecured as you and I've been discussing as to the parameters of it as to the lender on the joint tenants and convert it to a secure transaction when all of these facts are presented to the trial court everything here was before Judge Alexander and he makes the findings of fact that he does based on the fact that he has the witnesses before him and under that set of circumstances isn't it really equitable mortgage not equitable subrogation and under equitable mortgage they fail because they can't get reformed it's the same doctrine same analysis is under a reformation kind of situation which is why I suggested this that Judge Chuang and his analysis of this was correct and this case ought to be affirmed and it's also why I respectfully don't think that it's really a case for certification to the Court of Appeals and you know the argument is well what would the Court of Appeals Court of Special Appeals have done had this case been properly appealed had it been before it on the original record I think this court can easily substitute itself for and it really doesn't matter where it's Court of Special Appeals or the Court of Appeals because there could have been a certiorari in Maryland you can jump cert over the intermediate appellate court if the appellate court agrees and if you don't get it the first time you get cert the second time if the appellate court agrees so it's really this court putting itself in the same position that the reviewing court would have been right after the trial looking at not a disposition or motion but a disposition before trial court with regard to findings of fact that wipe out mutual mistake and I respectfully suggest given the whole plethora of mistakes that are made awfully hard to figure out what intent is where but by way of example the appellant tells you that well there's a couple of documents signed that suggest that the borrower is Mr. and Mrs. there's also a plethora of documents that are signed that tell you that the borrower is Mr. and we have the closing instruction we have the loan application all that's before the fact finder the fact finder makes his conclusion this review on appeal whether it's here whether it should have been in front of the court of special appeals at the time would have been on the record as it was presented from the trial court and the findings of Judge Alexander his conclusions of law review de novo but his findings of fact reviewed with a clearly erroneous standard with due regard given for what he found and the way he found it and unless there are any other questions for all of those reasons I respectfully ask that this court affirm the district court and grant somebody judge uh judge rushing do you have any questions I I will ask one question if I may um we've we haven't mentioned really this the the court of appeals decision in the boney mellon versus georg case council and um as as discussed in the brief the court of appeals there um said that ms georg's intent um was you know had already been litigated and decided and that that was dispositive for the claims in that case and the claims in that case included equitable subrogation equitable mortgage reformation etc um what I'm kind of I'm left wondering what if anything should I do with that um it was they were it was in the context of deciding collateral estoppel um so there's not a lot of discussion of it but they do seem to be saying that her intent is the relevant question for all of these issues um although as we've been discussing we there may be we may have doubts about that but this is the maryland court of appeals what do I what do you suggest we we must do or can do with this decision well your honor I think the point of the uh court of appeals decision in bank of new york mellon versus georg is that it confirms that the proceedings before judge alexander were on the merits there's a contention that he only dismissed versus on standing which would mean that there was never a merits determination and there was never a finding and right right I I agree with you about that that they that's you know that's what they were talking about but to find collateral estoppel they had to find that that the issue um the same issue had already been decided and that issue was dispositive of the the claims in front of them and that's what they say at the very end of the opinion um and the claims in front of them were claims for equitable subrogation and equitable mortgage and reformation so it it's not exactly the same question I agree with you but I'm I'm wondering if there's some level of deference we need to give or if this is some sort of indication or forecast of what the maryland court of appeals would say in this case well your honor I think it does give deference and it does treat the findings of fact by the trial court judge alexander in the circuit court for baltimore county appropriately and it means that this court ought not to disturb those findings as they were not clearly erroneous I think that's that's the conclusion to be drawn because the court of appeals essentially adopted judge glass's opinion from yeah well I mean the appeals wasn't obviously wasn't reviewing um that decision they weren't asked whether those were clearly erroneous they were just asked whether they were decided I guess my point is just that they they found not only was the issue decided but they said that the question of her intent is what's relevant for deciding these legal questions which I thought is what we had been talking about earlier yes ma'am I would agree with that that's all I have thank you judge jd judge richardson all right thank you very much mr frederick mr marinello you have some time and rebuttal thank you your honor addressing just a couple issues in reverse order um I'd like to just touch on the court of appeals decision that was just uh raised by judge rushing and I would point out I'm not quite sure what specific portion of the opinion judge rushing was referring to but we did point out in our reply brief that a portion of that opinion appears to have been sort of mischaracterized or misquoted by the appellees in their um uh brief and we so I do want to just call the court's attention um and invite sort of care carefully paying attention to because one portion yeah I agree with that there's I think page 737 or something they're quoting the lower court but the last page of the opinion 757 um it's not as cut and dry as um or as explicit as what the lower court said but you know the court of appeals says on 757 that um whether susan had the requisite knowledge and intent with respect to the execution of the trust um is dispositive of the claim um on in that case which included equitable segregation and mortgage and reformation I see that your honor and and I think what my the follow-up point I was going to make on this on this issue is that um the the court of the court of appeals decision really focuses on whether the um whether these claims and issues reached final judgment in the initial case in the state court case um and it is true that they did reach final judgment but we would as we put in our reply brief the the state court here did not necessarily the court of appeals did not assess whether the state court correctly resolved those issues I do think it's the the findings of fact that we're talking about that were made by the state trial court here are severely limited they are limited solely to mutual mistake with respect to her signing the deed of trust and as we pointed out in the reply brief that is a different question than didn't than the intent to enter into a mortgage loan um the deed of trust was but one document and while counsel for appellees is appointed to a couple documents um indicated and is arguing the negligence or the fault on the part of first horizon there are also clearly documents like the title commitment um and and uh and others that um reference a deed of trust to be signed by both mr georg and mrs georg um and that the fact of the matter is that of simply a mistake that did not happen um and i believe it's um i think judge agee correctly pointed to the to the benefit westfall case where that type of negligence and court gives a very telling um a statement in that case that that type of negligence is not intended to benefit the georgs in this situation um i would submit lastly and i see that i'm i'm about to run out of time if i could have just a few more seconds to to make this final statement your honor yeah go ahead and go ahead and sum up the um to the extent that the appellees assert that reformation or equitable mortgage are the proper uh remedy there's an interesting colloquy in the record i think you can find that it's attached to the affidavit of mr baker beginning at uh ja 7 7 678 and there's emails there where morton faller actually sort of advised and recommended to first horizon not to file summary judgment on equitable subrogation because it seems so clearly applicable and if it was entered he wasn't comfortable going to trial and asking for additional or more relief in the form of equitable mortgage and reformation and the reason that this this this uh sort of debate exists between these claims is equitable subrogation is a lesser relief for first horizon it is only going to get what chevy chase had in the first place by not sort of abandoning or not going for the equitable mortgage claim which would entitle them to a 1.1 million dollar um judgment um there's there's the reason equitable subrogation exists is because it doesn't harm the george's it puts everybody where they were had this refinance mortgage not taken place well thank you very much i appreciate the arguments from both council um as you're probably aware from prior practice it's our practice at the end of oral argument to come down and greet council obviously that's not possible by video so i hope that both of you will be able to come back at a later time post covid when we can uh come down and greet you in person uh so with that i hope you all have a safe weekend and stay uh safe health wise and with that i will then ask our um clerk to adjourn court for the day thank you this honorable court stands adjourned sena die god save the united states in this honorable court
judges: G. Steven Agee, Julius N. Richardson, Allison J. Rushing